UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 17-941(DSD/HB)

Mayo Foundation for Medical
Education and Research and
Mayo Clinic,

       Plaintiffs,

v.                                      **ORDER**

Enterprise Management Limited, Inc.
and Mary Lippitt,

       Defendants.

    Nicole M. Moen, Esq., Anne E. Rondoni Tavernier, Esq. and Fredrikson & Byron, 200 South 6th Street, Suite 4000, Minneapolis, MN 55402, counsel for plaintiffs.

    Paul Allen Godfread, Esq. and Godfread Law Firm, 6043 Hudson Road, Suite 305, Woodbury, MN 55125, counsel for defendants.

This matter is before the court upon the motion to dismiss or transfer by defendants. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion and transfers the case to the Middle District of Florida.

**BACKGROUND**

This declaratory judgment action arises out of the contention that plaintiffs Mayo Clinic and Mayo Foundation for Medical Education and Research (collectively Mayo) infringed one of defendants' copyrighted charts. Mayo's principal place of business is Rochester, Minnesota. Compl. ¶ 1. Defendant Dr.

Mary Lippitt, a Florida resident, is the sole owner and employee of Enterprise Management Limited, Inc., a Florida corporation.[1] Id. ¶ 2. EML develops educational materials and provides business solutions to corporations, educational institutions, and non-profit organizations. Lippitt Decl. ¶ 3. EML's materials include, among other things, numerous articles and two books authored by Lippitt, which incorporate a series of graphics, including the work at issue. Id. ¶ 11. EML owns the exclusive license to Lippitt's work. Id. ¶ 12.

Neither EML nor Lippitt own property in Minnesota, directly advertise to Minnesota businesses or consumers, or conduct business with any company in Minnesota.[2] Lippitt Decl. ¶¶ 6-7. EML sells Lippitt's works online both directly and through third-party websites such as Amazon.com. See Tavernier Decl. ¶¶ 3-6.

On August 18, 2016, Mayo contacted EML via email requesting permission to use one of Lippitt's charts in an internal training program. Compl. ¶ 12. EML responded that it would grant Mayo a five-year license to use the chart for $8,000. Id. ¶ 13. The

---

[1] The court will refer to defendants collectively as EML unless more specificity is required.

[2] In 2012, Lippitt spoke at Mayo's Jacksonville, Florida campus during an event for the American College of Healthcare Executives, but she had no contacts with Mayo personnel in Minnesota before the events giving rise to this action. See id. ¶¶ 16-20.

2

parties negotiated over the next month, but were unable to reach agreement. Id. On September 23, 2016, EML withdrew its most recent offer and requested contact information for Mayo's legal counsel. Id. Thereafter, and through the month of November, counsel for Mayo communicated directly with EML. See id. ¶¶ 16-18. In those communications, EML accused Mayo of copyright infringement after learning that Mayo had been using the chart for some period of time before seeking a license. Id. ¶¶ 16-19. Although Mayo denied that the chart was protected by the copyright laws, it offered to resolve the dispute for $10,000, with the assurance that it would not use the chart going forward. Id. ¶ 18; id. Ex. A. Several months later, on March 15, 2017, and this time through counsel, EML responded with a counteroffer of $125,000. Compl. ¶¶ 22, 24; id. Ex. B, at 3. EML threatened litigation if the matter could not be resolved and attached a draft complaint.[3] Compl. ¶ 23; id. Ex. B, at 1.

On March 29, 2017, Mayo commenced the instant action seeking a declaration that it has not infringed and is not infringing the allegedly copyrighted materials. Less than a month later, EML filed a copyright infringement action against Mayo in the Middle District of Florida, which is the mirror image of this case.

---

[3] It is undisputed that none of the parties' communications were in person.

Enter. Mgmt. Ltd. v. Mayo Clinic, No. 8:17-cv-943 (M.D. Fla. filed Apr. 20, 2017). That action has been stayed pending the court's determination of the present motion. Id., ECF No. 12.

**DISCUSSION**

**I. Standard of Review**

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must establish a prima facie case that the forum state has personal jurisdiction over the defendant. Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998). In the absence of an evidentiary hearing, a court "must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party." Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). A federal court may assume jurisdiction over a nonresident defendant "only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004) (citation and internal quotation marks omitted). Because the Minnesota long-arm statute "confers jurisdiction to the fullest extent permitted by the Due Process Clause," the court need only consider due process requirements. Coen v. Coen, 509 F.3d 900, 905 (8th Cir. 2007).

To satisfy due process, a defendant must have "sufficient minimum contacts" with the forum state such that maintaining the suit "does not offend traditional notions of fair play and substantial justice." Romak, 384 F.3d at 984. "Sufficient contacts exist when [a] defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court" here. Coen, 509 F.3d at 905 (citation and internal quotation marks omitted).

A defendant's contacts with the forum state can establish personal jurisdiction under either general or specific jurisdiction. A forum state has specific jurisdiction when the cause of action "arise[s] out of" or "relate[s] to" a defendant's activities within that state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (citation and internal quotation marks omitted). General jurisdiction is present when, regardless of the cause of action, a defendant has "continuous and systematic contacts with the forum state." Coen, 509 F.3d at 905 (citation and internal quotation marks omitted). Under either analysis, the Eighth Circuit considers five factors in determining whether personal jurisdiction exists: "(1) the nature and quality of defendant's contacts with the forum state; (2) quantity of contacts; (3) source and connection of the cause of action with those contacts; and to a lesser degree, (4) the interest of the

forum state; and (5) the convenience of the parties." Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1432 (8th Cir. 1995).

## II. Sufficiency of Contacts

EML argues that it has insufficient contacts with Minnesota to trigger either general or specific jurisdiction. The court agrees.

### A. Specific Jurisdiction

As an initial matter, Mayo has failed to establish a prima facie case that Minnesota has specific jurisdiction over EML. The legal issue in this case is whether Mayo has infringed EML's copyright by using Lippitt's chart in internal training sessions in Minnesota. Yet specific jurisdiction is premised on the parties' communications via telephone, email, and letters regarding licensing and subsequent attempts to resolve EML's copyright claim.[4] Not only are those communications tangential to the core issue in the case, i.e., infringement, they do not

---

[4] Mayo seems to argue that the court should consider sales of EML's written works in the context of specific jurisdiction, because some of those works contain the chart at issue. The court disagrees. Although sales of those works, if substantial enough, could be relevant to the issue of whether EML is subject to general jurisdiction in Minnesota, they do not bear on the narrower issue of specific jurisdiction, which focuses on EML's contacts with Minnesota in the context of this case. Nor does EML's website confer specific jurisdiction given that this case does not involve the website itself or sales generated by the website.

6

constitute "activities" within Minnesota by EML. First, they were initiated by Mayo. See Datalink Corp. v. Perkins Eastman Architects, P.C., 33 F. Supp. 3d 1068, 1073 (D. Minn. 2014) (quoting Coen v. Coen, No. 05-596, 2006 WL 2727219, at *20 (D. Minn. Sept. 22, 2006)) ("[W]hether or not the nonresidential defendant is the aggressor in a transaction is important in assessing" purposeful availment). Second, they occurred only via telephone, email, and letter. See Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd., 89 F.3d 519, 523 (8th Cir. 1996) ("Although letters and faxes may be used to support the exercise of personal jurisdiction, they do not by themselves establish jurisdiction."); see also Lucachick v. NDS Americas, Inc., 169 F. Supp. 2d 1103, 1107 (D. Minn. 2001) (explaining that negotiations conducted over the telephone are not enough to confer jurisdiction); KG Funding, Inc. v. Partridge, No. 12-2155, 2012 WL 5904439, at *2 (D. Minn. Nov. 26, 2012) ("[T]he receivers' location alone should not determine specific jurisdiction .... [defendant] purposefully communicated with a resident who lived in Minnesota, but there is no evidence that [he] purposefully availed himself of the Minnesota legal forum."). And, third, they did not result in any agreement or future business between the parties in Minnesota or elsewhere. The contacts are therefore insufficient to establish that EML "purposefully

7

directed" its activities to Mayo in Minnesota. <u>Burger King</u>, 471 U.S. at 472.

Mayo argues that EML's decision to negotiate with Mayo triggered specific jurisdiction, but it cites to no authority supporting the proposition that contacts initiated by a forum-based resident resulting in failed business negotiations with a non-resident are sufficient to establish jurisdiction. Nor is the court able to find any such authority. As a result, specific jurisdiction does not exist.

**B.  General Jurisdiction**

Mayo has likewise failed to establish that EML has continuous or systematic contacts with Minnesota sufficient to establish general jurisdiction. Neither Lippitt nor EML has traveled to, directly conducted business in, owned property in, or had any other regular dealings with the state. <u>Westley v. Mann</u>, 896 F. Supp. 2d 775, 797 (D. Minn. 2012). There is also no evidence that EML took affirmative actions to sell Lippitt's works to Minnesota businesses or consumers. The fact that some of her works may have ended up here is not enough.

It is well established that isolated sales of products are insufficient to confer general jurisdiction over a non-resident defendant. See <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 418 (1984) ("[M]ere purchases, even if

occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions."); <u>Burlington Indus., Inc. v. Maples Indus., Inc.</u>, 97 F.3d 1100, 1103 (8th Cir. 1996) ("Simple commercial contacts, unrelated to [plaintiff]'s claims are insufficient to establish [general] personal jurisdiction."); <u>Jacobs Trading, LLC v. Ningbo Hicon Intern. Indus. Co.</u>, 872 F. Supp. 2d 838, 849 (D. Minn. 2012) ("[A] total of twenty individual shipments to only four Minnesota companies over a period of more than four years does not constitute such 'continuous and systematic' contacts with the forum such that this Court could exercise general personal jurisdiction over [defendant]."). Mayo thus has failed to establish that EML's conduct created "sufficient contacts ... with [Minnesota]" that "are such that [it] should reasonably anticipate being haled into court" here. <u>Coen</u>, 509 F.3d at 905 (citation and internal quotation marks omitted). As a result, the court also lacks general jurisdiction over EML.[5]

The court is unconvinced that additional jurisdictional discovery will reveal contacts sufficient to confer jurisdiction

---

[5] Because the court concludes that it does not have personal jurisdiction over EML, it will not address EML's remaining arguments or its request to transfer on the basis of forum non conveniens.

in light of the meager contacts now known. See <u>Greenbelt Res. Corp. v. Redwood Consultants, LLC</u>, 627 F. Supp. 2d 1018, 1028 (D. Minn. 2008) (holding that a plaintiff's request for jurisdictional discovery must be "specifically targeted to flesh out connections already shown to exist," not merely an attempt "to cast a wide net for potential contacts with the forum state").

**III. Transfer**

When a plaintiff brings a case in a district lacking personal jurisdiction, the court may dismiss the case, or if in the interest of justice, transfer the case to any district in which it could have been brought. 28 U.S.C. § 1406(a); <u>see also</u> <u>Wilson v. St. Mary's Hosp.</u>, 822 F. Supp. 1450, 1451 (D. Minn. 1993) ("Transfer pursuant to § 1406 to remove a procedural obstacle such as lack of personal jurisdiction is favored over dismissing an action because transfer facilitates the adjudication of a dispute on its merits."). In the interest of justice, the court will transfer the case to the Middle District of Florida, where the related case is pending, so as to avoid the costs and delay associated with requiring Mayo to refile the case.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motion to dismiss or transfer venue [ECF No. 11] is granted in part as set forth above; and

2. The case is transferred to the United States District Court for the Middle District of Florida.


Dated: September 27, 2017

                                                s/David S. Doty
                                                David S. Doty, Judge
                                                United States District Court